# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| GLENN R. BEHNKE, )<br>                **Plaintiff,** )<br>    v.                  )<br>                         )<br>AT&T MOBILITY SERVICES LLC, A )<br>LIMITED LIABILITY COMPANY )<br>ORGANIZED UNDER THE LAWS OF )<br>DELAWARE, )<br>               **Defendant.** ) | Case No. 11-2262 |

## Report & Recommendation

In October 2011, Plaintiff Glenn R. Behnke filed a Complaint in the Circuit Court of the Sixth Judicial Circuit in Champaign County, Illinois against Defendant AT&T Mobility Services, LLC. Defendant filed a Notice of Removal (#1) to bring the case to this Court in November 2011. Federal jurisdiction is diversity of citizenship, pursuant to 28 U.S.C. § 1332. Plaintiff is a pro se litigant.[1]

In November 2011, Defendant filed a Motion to Dismiss (#3) pursuant to FED. R. CIV. P. 12(b)(6), arguing that Plaintiff's Complaint references a General Release and Waiver signed by Plaintiff following the termination of his employment, and that this waiver bars his claims. Plaintiff filed a Response to Motion to Dismiss (#7) and an accompanying memoranda. Pursuant to this Court's Text Order entered in January 2012, Defendant's Motion to Dismiss (#3) was converted to a motion for summary judgment and the parties were granted time to submit additional materials. Defendant subsequently filed a Reply Memorandum in Support of Motion for Summary Judgment (#12) and Plaintiff filed a Memorandum in Support of Response to Motion for Summary Judgment (#13). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant's Motion to Dismiss **(#3)** be **GRANTED**.

---

[1]Though the Court only holds this Plaintiff to the same standard it would hold any other pro se litigant with respect to Plaintiff's pleading burden, the Court notes that Plaintiff is a former attorney, and practiced law for nearly fifteen years. (#4-1, p. 5).

## I. Background

The following background is taken from the allegations in Plaintiff's complaint, as well as the General Release and Waiver contract attached as an exhibit to Defendant's motion to dismiss.

Plaintiff was employed by Defendant from February 13, 2006 until February 21, 2011. In his last position, he worked as a Tier One Manager for Customer Service from March 3, 2008 until his termination on February 21, 2011.

On October 28, 2010, Defendant announced that some Tier One Managers' positions would be eliminated, or "surplussed", using the parties' terminology. The affected managers were to be surplussed on December 28, 2010. Plaintiff was notified on October 28, 2010 that he would be one of the managers surplussed.

Plaintiff alleges that, shortly before this announcement, Plaintiff had notified Defendant that he was scheduled to undergo knee replacement surgery on December 14, 2010, and he had scheduled to be away from work from December 12, 2010 to February 6, 2011. Plaintiff further alleges that his job performance was satisfactory, and that his immediate supervisor was not contacted prior to the Defendant's decision to terminate him. Based on his seniority, his job performance, and the timing of his scheduled knee surgery, Plaintiff believes that Defendant's decision to terminate his employment was due to his need to be absent from work for the surgery.

Shortly after Plaintiff was terminated, he signed a general release and waiver, titled "General Release and Waiver AT&T Severance Pay Plan." The waiver in essence provides that, in exchange for a severance allowance and other benefits, the terminated employee waives potential claims against Defendant. The General Release and Waiver contract states:

> I understand that there are various local, state and federal laws that govern any employment relationship with the Participating Company and/or prohibit discrimination on the basis of age, color, race, gender, sexual orientation, marital status, national origin, mental or physical disability, religious affiliation or veteran

> status. Such laws include, but are not limited to, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act. By signing this General Release and Waiver, I intend to give up any rights I may have under these or any other laws with respect to my employment and to the termination of my employment with the Participating Company.
>
> In exchange for the Plan benefits described under Section III of this General Release and Waiver, I hereby release the Plan, ATTInc. and the Participating Company and their current and former parents, subsidiaries, affiliates, successors or assigns (the "Companies"), and the Companies' current and former officers, directors, employee benefit plans, employees and related parties (Released Parties) from any claims, liabilities, demands or causes of action, whether for discrimination, breach of contract, or any other claim, including but not limited to claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act (FMLA), the Worker Adjustment and Retraining Notification (WARN) Act, or the Employee Retirement Income Security Act (ERISA), that I may have or claim to have had as of or prior to the date of this General Release and Waiver against any Released Parties based on my employment with the Companies or the termination of that employment, except for any vested pension or savings benefits under the terms of any employee benefit plan other than the ATTInc. Severance Pay Plan and except claims for commission(s) on sales made during the current Sales Compensation Plan year or claims for commission(s) on sales made during the Sales Compensation Plan year immediately prior to the current Sales Compensation Plan year.
>
> I agree that any wages and overtime payments owed me have been paid (except for any amounts I claim are due and owing which I have listed at the end of this General Release and Waiver), and that the benefits extended to me in exchange for this General Release and Waiver are in addition to all such amounts. "Wages" as referred to in the immediately preceding sentence does not include commission(s) on sales made during the current Sales Compensation Plan year or the Sales Compensation Plan year immediately prior to the current Sales Compensation Plan year.

(#4-1, pp. 15-16).

Plaintiff indirectly references the General Release and Waiver in his complaint, but does not attach it to the Complaint. In referring to the General Release and Waiver, Plaintiff alleges that Defendant's HR Manager stated that Plaintiff and other terminated employees would not be permitted to negotiate any alterations to the "Discharge and Severance documents" without forfeiting their benefits. (#4-1, p. 2). Plaintiff alleges "This unequal bargaining position negates

3

the defendant's position . . . that the Plaintiff waived any rights to pursue further action against the Defendant." (#4-1, p. 2).

Defendant has submitted the General Release and Waiver and Severance Documents with Defendant's Motion to Dismiss (#3). The General Release and Waiver provides Plaintiff with $6,365.00 subject to withholdings and continued life and medical insurance in exchange for the waivers quoted above. (#4-1, pp. 10-13). The General Release further provides: "In order to receive the benefits of the Plan, you must sign this general release and waiver of claims (the "General Release and Waiver") in the exact form provided, without altering, deleting from, or adding to it." (#4-1, p. 10). Defendant has stipulated to this Court that the General Release and Waiver was not subject to negotiation.[2]

Plaintiff brings two counts against Defendant. In Count I, Plaintiff seeks damages for lost earnings, future earnings, punitive damages, and costs in connection with his termination of employment. In Count II, Plaintiff seeks damages in connection with an alleged error in the calculation of payment owed to him in compensation for vacation days and personal days not taken at the time of his termination.

## II. Standard

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material factual dispute exists that requires a trial. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[2]Based on this stipulation, this Court denied Plaintiff's request for discovery, in which Plaintiff sought evidence to support his allegation that the General Release and Waiver was not subject to negotiation. The Court considered this matter at a hearing held on January 9, 2012.

The Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). However, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex*, 477 U.S. at 322-23. Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmoving party must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e)(2); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts, and instead must present definite, competent evidence to rebut the motion. *Wolf v. Nw. Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001); *Albiero*, 246 F.3d at 932.

### III. Discussion

Defendant argues that summary judgment is proper because Plaintiff's claims were waived in the General Release and Waiver which Plaintiff voluntarily signed. Plaintiff argues that the General Release and Waiver arose out of unequal bargaining positions and that equity favors allowing the Plaintiff to bring this claim. For the reasons explained below, this Court finds that the Defendant is entitled to summary judgment.

This Court first notes that the General Release and Waiver encompasses the discrimination and wage claims in the Complaint. The General Release and Waiver specifically anticipates, and waives, "any claims" based on Plaintiff's employment, including those based on breach of contract, those arising from discrimination on the basis of physical disability or under the Americans with Disabilities Act, and those arising under the Family and Medical Leave Act. (#4-1, pp. 15-16). The Seventh Circuit has found settlements releasing "any and all claims" to unambiguously encompass discrimination claims. *E.g., Hampton v. Ford Motor Co.*, 561 F.3d 709, 715 (7th Cir. 2009). The General Release and Waiver also states that any wages owed have

5

already been paid. (#4-1, p. 16). Therefore, Plaintiff's discrimination and wage claims fall under the General Release and Waiver.

An employee may waive employment claims as part of a settlement as long as the employee's consent to the settlement was voluntary and knowing. *Riley v. Am. Family Mutual Ins. Co.*, 881 F.2d 368, 371 (7th Cir. 1989). To determine whether a party entered a release knowingly and voluntarily, a court must examine the totality of the circumstances surrounding its execution and consider a number of factors, including, but not limited to:

> (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Hampton*, 561 F.3d at 716–717.

Here, we find that the General Release and Waiver was consented to voluntarily and knowingly based on the Plaintiff's experience and the clarity of the agreement. Plaintiff earned a juris doctorate degree and practiced law for nearly fifteen years. (#4-1, p. 5). Plaintiff was given 45 days to consider the waiver and was advised to consult with an attorney before signing the waiver. (#4-1, p. 15). After receiving further encouragement to seek legal advice before signing, Plaintiff signed the waiver, agreeing that the entire document was read and that the signature was "knowing, free and voluntary." (#4-1, p. 16). Finally, the consideration of $6,365.00 minus withholdings Plaintiff received in exchange for Plaintiff's signature does not appear to be improper, in that it appears to exceed the benefits to which Plaintiff was already entitled. Therefore, the clarity with which the document releases "any claims" based on Plaintiff's employment, the Plaintiff's own previous legal experience, and the multiple suggestions to seek advice of counsel persuade this court that the General Release and Waiver was signed voluntarily and knowingly.

This Court acknowledges that the take-it-or-leave-it nature of this agreement left little room for negotiation, but this factor does not by itself void the agreement. Plaintiff was presumably in a weak bargaining position when Plaintiff signed the General Release and Waiver without any alteration of the document itself. (#4-1, p.10). However, unequal bargaining does not negate a contract:

> Illinois law does not void contracts where parties have unequal bargaining power, even if a contract is a so-called 'take-it-or-leave-it' deal and 'consent to [the] agreement is secured because of hard bargaining positions or the pressure of financial circumstances. Rather, the conduct of the party obtaining the advantage must be shown to be tainted with some degree of fraud or wrongdoing in order to have an agreement invalidated ... [T]he mere fact that a person enters into a contract as a result of the pressure of business circumstances ... is not sufficient.'

*Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367 (7th Cir. 1999) (quoting *Kewanee Prod. Credit Ass'n v. G. Larson & Sons Farms*, 496 N.E.2d 531, 534 (1986)).

This Court concludes that the General Release and Waiver validly encompasses and waives the wage and discrimination claims asserted in Plaintiff's Complaint.

### IV. Summary

For the reasons stated above, this Court recommends that Defendant's Motion to Dismiss **(#3)**, converted to a motion for summary judgment, be **GRANTED.**

ENTERED this 14th day of May, 2012.

                                               s/ DAVID G. BERNTHAL
                                               U.S. MAGISTRATE JUDGE